IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHANELL D. J.H.,[1]
    Plaintiff,

        v.                                                      Civil No. 3:21-cv-000270 (MHL)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,
    Defendant.

## REPORT AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of Shanell D. J.H. ("Plaintiff") for disability insurance benefits under the Social Security Act (the "Act"). Plaintiff was forty-five years old at the time of her application and previously worked as special education teacher. (R. at 51, 214, 223.) She alleges she is disabled due to a panic disorder, general anxiety disorder, depression, and post-traumatic stress disorder ("PTSD"). (R. at 222.)

On December 17, 2020, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 9.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[3]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Acting Commissioner Kijakazi should be substituted as the defendant in this suit.

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year

1

Plaintiff seeks review of the ALJ's decision, arguing that the ALJ erred in her residual functional capacity findings because she failed to account for Plaintiff's limitations in sustained concentration and persistence. (Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 23 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 22) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 24) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on January 17, 2019, alleging disability beginning January 31, 2017. (R. at 141.) Plaintiff then amended her alleged onset date to December 1, 2018. (R. at 31-32.) The Social Security Administration ("SSA") denied Plaintiff's claims on April 17, 2019 and again upon reconsideration on November 18, 2019. (R. at 81-84, 90-96.) Plaintiff requested a hearing before an ALJ, and a hearing was held on December 2, 2020. (R. at 28-50, 97-98.) On December 17, 2020, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 12-20.) Plaintiff requested review of the ALJ's decision, and on March 18, 2021, the SSA Appeals Council denied it and rendered the ALJ's decision as the final decision of the Commissioner. (R. at 1-3, 138-40.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual

---

of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 416.945(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 416.920(a)(4)(v).

4

## III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 12-20.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 1, 2018, the alleged onset date. (R. at 14.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) PTSD; (2) panic disorder; (3) generalized anxiety disorder; and (4) unspecified personality disorder. (R. at 14.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526.) (R. at 15-16.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 16.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform a full range of work at all exertional levels with the following non-exertional restrictions:

> [Plaintiff] can understand, remember and carry out simple instructions and make simple work-related decisions. She can work at a consistent pace throughout the workday but not at a production rate pace such as on an assembly line or work involving monthly or hourly quotas. She can tolerate occasional interaction with coworkers and supervisors and no interaction with the public. She can tolerate occasional changes in work setting.

(R. at 16.)

The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including the medical opinions and prior administrative medical findings, in accordance with the regulations. (R. at 16.) Based on her residual functional capacity findings, the ALJ concluded at step four that Plaintiff is unable to

5

perform any past relevant work as actually or generally performed. (R. at 19.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 19.) In making her findings, the ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of representative occupations such as cleaner, packer, and stock clerk. (R. at 19-20.) Accordingly, the ALJ concluded that Plaintiff is not disabled under the Act. (R. at 20.)

## IV. ANALYSIS

Plaintiff requests that this Court recommend remand on two issues: (1) whether the ALJ properly accounted for Plaintiff's ability to maintain concentration and persistence in her residual functional capacity assessment; and (2) whether the ALJ's hypothetical posed to the vocational expert accounted for all of Plaintiff's substantiated impairments. (Pl.'s Mem. at 8.) Defendant responds that the ALJ's residual functional capacity determination "fully accounted for the impact of Plaintiff's severe mental impairments by limiting her to unskilled work," and the ALJ "fully articulated her findings, which are supported by the evidence of record." (Def.'s Br. Supp. Summ. J. 10, 13, ECF No. 24 ("Def.'s Mem.").) For the reasons that follow, this Court finds that the ALJ did not err, and substantial evidence supports the ALJ's decision.

**A. The ALJ Reasonably Accounted for Plaintiff's Moderate Difficulties in Concentration, Persistence or Pace in Her Residual Functional Capacity.**

Plaintiff argues that the ALJ's residual functional capacity assessment failed to reasonably account for her moderate difficulties in concentration, persistence, or pace. (Pl.'s Mem. at 8.) Specifically, Plaintiff contends that the ALJ was legally required by *Mascio* to include a specific "off-task limitation" in the residual functional capacity to account for Plaintiff's moderate limitation in concentration, persistence, and pace. (Pl.'s Mem. at 8.) Defendant distinguishes this

case from *Mascio* by noting that the ALJ here engaged in a more substantial analysis and accounted for Plaintiff's limitations in her residual functional capacity assessment. (Def.'s Mem. at 11-12.)

1. *Legal Standard.*

If an ALJ finds that a claimant has a moderate impairment in concentration, persistence, and pace, the ALJ generally must account for those limitations in the claimant's residual functional capacity or explain why such limitations are not required. *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) (remanding case because an ALJ did not account for moderate limitations in concentration, persistence, and pace by limiting a claimant's residual functional capacity to simple, routine tasks or unskilled work); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2021) (remanding because ALJ found moderate limitation in concentration, persistence, and pace, but failed to include any corresponding limitations in the claimant's residual functional capacity without a sufficient explanation why corresponding limitations were not required).

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1). In making a residual functional capacity determination, the ALJ assesses what Plaintiff can ably perform in light of examining all of her physical and mental impairments through a two-part analysis. §§ 404.1520(e), 404.1545; SSR 96-8p, 1996 SSR LEXIS 5. The residual functional capacity must incorporate impairments supported by the objective medical evidence in the record and those impairments based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* 20 C.F.R. § 404.1529(a); SSR 96-7p, 1996 SSR LEXIS 4.

First, the ALJ determines whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Craig*, 76 F.3d at 594; SSR 96-7p, at 1-3, 1996 SSR LEXIS 4. In doing so, the ALJ must consider all the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5 n.3, 1996 SSR LEXIS 4; *see also* SSR 96-8p, at 13, 1996 SSR LEXIS 5 at *13 (specifically stating that the "[residual functional capacity] assessment must be based on all of the relevant evidence in the case record"). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second step requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects her ability to work. *Craig*, 76 F.3d at 595.

If the ALJ determines that a mental impairment exists, the ALJ "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [her] findings*." Patterson v., Comm'r, Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Among other factors, the ALJ must document specific findings as to the degree of limitation of Plaintiff's concentration, persistence, or pace. *Id*.

In *Mascio*, the Fourth Circuit recognized that a hypothetical fails if the ALJ does not account for a relevant factor when determining the claimant's residual functional capacity. 780 F.3d at 638. The hypothetical presented in *Mascio* failed to address the claimant's mental limitation, even though the ALJ found that the claimant had moderate difficulties maintaining concentration, persistence, and pace. *Id*. Further, the Fourth Circuit held that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation . . . account[s] for a claimant's limitation in concentration, persistence, or pace." *Id.* Thus, the Fourth Circuit remanded

the case because the ALJ failed to address a relevant factor in the claimant's residual functional capacity. *Id.*

Conversely, an ALJ satisfies *Mascio* by providing a detailed discussion of Plaintiff's capacity for concentration, persistence, or pace. *See Thomas v. Colvin*, 2016 U.S. Dist. LEXIS 34301, 2016 WL 1070826, at *4 (E.D. Va. Mar. 16, 2016) (finding *Mascio* satisfied because substantial evidence supported the residual functional capacity, and finding no inconsistency in the ALJ's assessment of the plaintiff's concentration, persistence or pace limitations); *see also Sizemore v. Colvin,* 2016 U.S. Dist. LEXIS 14270, 2016 WL 483140, at *3 (W.D.N.C. Feb. 5, 2016) (holding that the ALJ satisfied *Mascio* because he specifically explained how the plaintiff's limitations translated into work limitations); *Mitchell v. Colvin*, 2015 U.S. Dist. LEXIS 130061, 2015 WL 5690899, at *5-7 (W.D. Va. Sept. 28, 2015) (distinguishing *Mascio*, because the ALJ relied on medical evidence to support his conclusion and did not summarily conclude that a limitation of simple, unskilled work accounted for the plaintiff's moderate impairment in concentration, persistence and pace); *St. Clair v. Colvin*, 2015 U.S. Dist. LEXIS 121036, 2015 WL 5310777, at *6 (W.D. Va. Sept. 11, 2015) (a residual functional capacity assessment relying on medical opinion evidence that the plaintiff could "perform simple and repetitive tasks and maintain regular attendance in the work place," despite having moderate impairment in concentration, satisfied *Mascio*).

These cases establish that *Mascio* did not create a per se rule that a claimant's moderate impairment in concentration, persistence or pace always translates into a residual functional capacity limitation. *Mitchell*, 2015 U.S. Dist. LEXIS 130061, 2015 WL 5690899, at *7. Rather, *Mascio* highlighted the ALJ's duty to review the evidence and explain her decision. *Id.*

In *Linares v. Colvin*, the claimant also had moderate limitations with concentration, persistence, and pace. 2015 U.S. Dist. LEXIS 93291, 2015 WL 4389533, at *2-*3 (W.D.N.C. July 17, 2015). To account for these non-exertional limitations, the ALJ limited the claimant to "simple, repetitive, routine tasks in a stable work environment at a nonproduction pace with only occasional public contact." 2015 U.S. Dist. LEXIS 93291, [WL] at *3. The court distinguished *Mascio*, where the ALJ had merely limited the claimant to "simple, routine tasks or unskilled work." 2015 U.S. Dist. LEXIS 93291, [WL] at *4 (quoting *Mascio*, 780 F.3d at 638). Instead, the court held that the ALJ in *Linares* went further, accounting for the claimant's limitation in pace by restricting her to non-production work, and accounting for her limitations in concentration and persistence by restricting her to a stable work environment with only occasional public contact. *Linares*, 2015 U.S. Dist. LEXIS 93291, 2015 WL 4389533, at *4.

Other courts have held that similar limitations adequately account for moderate limitations with concentration, persistence, or pace. *See Eastwood v. Colvin*, 2016 U.S. Dist. LEXIS 25957, 2016 WL 805709, at *4 (E.D. Va. Feb. 12, 2016) (holding that the ALJ accounted for the claimant's limitations in concentration, persistence and pace by limiting her to: (1) few workplace changes; (2) little independent decision-making; and (3) less than an assembly line pace); *Massey v. Colvin*, 2015 U.S. Dist. LEXIS 79708, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015) (distinguishing *Mascio* because the ALJ's hypothetical limited the claimant's exposure to noise; contact with the public, co-workers and supervisors; changes in his work environment; and, his production pace); *see also Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (holding that restricting a claimant to no high production goals adequately captured the claimant's moderate difficulties with concentration, persistence and pace); *Robinson v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 116065, 2014 WL 4145339, at *10 (E.D. Mich. Aug. 20, 2014) (holding that limiting

a claimant to simple, routine, repetitive tasks with no fast-paced production requirements sufficiently accounted for the same moderate difficulties).

   2. *Mascio Analysis.*

Here, the ALJ limited Plaintiff to work "at a consistent pace throughout the workday but not at a production rate pace such as on an assembly line or work involving monthly or hourly quotas. She can tolerate occasional interaction with coworkers and supervisors and no interaction with the public. She can tolerate occasional changes in work setting." (R. at 16.) Like the ALJ in *Linares*, the ALJ here accounted for Plaintiff's moderate difficulty with pace by restricting her from production rate work. (R. at 16.) By eliminating more than occasional changes in the workplace, and limiting Plaintiff working with no public interaction and only occasional interaction with supervisors and co-workers, the ALJ also properly accounted for her moderate difficulties with concentration and persistence. (R. at 16.) The ALJ explained that Plaintiff's allegedly severe mental limitations lacked consistent support from the record, which revealed that counseling and medication often controlled her conditions. (R. at 17.) Further, the ALJ relied on Plaintiff's daily activities —preparing meals, grocery shopping, driving, handling her own medical care, attending church, reading, and watching television — as evidence that Plaintiff retained the capacity to work as outlined in the residual functional capacity. (R. at 15.)

Moreover, the ALJ relied on expert opinion evidence to address Plaintiff's moderate limitations in concentration, persistence, and pace. (R. at 18.) The state agency expert, Val Bee, Psy.D. ("Dr. Bee"), agreed that Plaintiff had sustained concentration and persistence limitations, but that she was not significantly limited in her ability to: (1) carry out short and simple or detailed instructions; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) sustain an ordinary routine without special supervision; and (4)

11

make simple work-related decisions. (R. at 58.) Dr. Bee opined that Plaintiff "may exhibit occasional lapses in concentration and efficiency, but she appears mentally capable of routine, well-structured task activities." (R. at 59.) She also noted that Plaintiff "may be prone to conflicts at times with coworkers and supervisors, but she could persist in a role with well-defined performance expectations and only limited and superficial social demands." (R. at 59.) Ultimately, the ALJ limited the rate of production and interaction with others and frequency of workplace changes to accommodate Plaintiff's mental limitations.

The ALJ's residual functional capacity essentially tracks the residual functional capacity that this Court upheld as consistent with *Mascio* in *Parker v. Colvin*, 2015 U.S. Dist. LEXIS 132579, 2015 WL 5793695 (E.D.Va. Sept. 29, 2015). In *Parker*, the ALJ found the claimant capable of "performing unskilled work with a specific vocational preparation code of no more than two in a non-production oriented work setting. [Claimant] should have no interaction with the public and only occasional interaction with coworkers or supervisors." *Parker*, 2015 U.S. Dist. LEXIS 132579, 2015 WL 57793695, at *21 (internal record citations omitted). In finding this hypothetical appropriate under *Mascio*, this Court concluded that "because the ALJ's hypothetical included a non-production work environment restriction, the ALJ's hypothetical and corresponding [residual functional capacity] determination appropriately considered [claimant's] moderate limitation in concentration and pace." 2015 U.S. Dist. LEXIS 132579, [WL] at *23.

By incorporating Plaintiff's limitations into the residual functional capacity – and explaining her decision – the ALJ adequately addressed Plaintiff's ability to stay on task and accounted for her difficulties with concentration, persistence, and pace. The opinions of the state agency expert support the residual functional capacity assessment given Plaintiff's moderate

limitations. Consequently, the ALJ satisfied the requirements of *Mascio*, and substantial evidence in the record supports her decision.

**B. The ALJ Did Not Err in Her Hypothetical Question to the Vocational Expert, and Substantial Evidence Supports Her Residual Functional Capacity Findings.**

Plaintiff next argues that the residual functional capacity "as presented to the [vocational expert] is legally insufficient." (Pl.'s Mem. at 7.) Presumably, Plaintiff does not challenge the sufficiency of the hypothetical questions and whether they accurately represented Plaintiff's residual functional capacity and fairly described her mental health impairments. Indeed, Plaintiff notes that "[a]lthough the ALJ failed to include an off-task limitation in her [residual functional capacity] finding, she did address it with the [vocational expert] during the hearing." (Pl.'s Mem. at 9.)

Instead, Plaintiff alleges that the ALJ's residual functional capacity findings are not supported by substantial evidence because they did not account for the off-task limitations addressed in the ALJ's hypothetical question to the vocational expert at Plaintiff's administrative hearing. (Pl.'s Mem. at 7-9.) Plaintiff argues, specifically, that the ALJ failed to properly address Plaintiff's moderate limitations in concentration, persistence, or pace in her residual functional capacity assessment despite the vocational expert's testimony that "an individual who is off-task 15 to 20 percent of a work day would be unable to maintain competitive employment." (Pl.'s Mem. at 9, citing R. at 49.) Accordingly, Plaintiff contends that the residual functional capacity must not be supported by substantial evidence. In support, Plaintiff reasons that:

> By failing to include an off-task limitation in her [residual functional capacity] the ALJ is effectively finding that [Plaintiff] has no issues maintaining her concentration and persistence. Such is contrary to all the evidence in this matter. Arguably, the best evidence reflecting such limitations are the opinions of [Plaintiff's] treating provider. Both forms reflect marked limitations in sustained concentration and

13

>persistence, which far exceeds employer tolerances per the [vocational expert] testimony.

(Pl.'s Mem. at 9.)

As discussed above, the ALJ properly assessed Plaintiff's mental impairments in the residual functional capacity and sufficiently accounted for Plaintiff's difficulties in maintaining concentration, persistence, and pace. Plaintiff's argument amounts to a disagreement with the ALJ's determination that Plaintiff is limited to work at a consistent pace throughout the workday with certain limitations and is essentially asking this Court to reweigh the evidence.

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Thus, if the Commissioner's denial of benefits is supported by substantial evidence and the correct legal standards are applied, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456. Accordingly, the Court declines to re-weigh the evidence and finds that substantial evidence supports the ALJ's decision.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 22) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 24) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                              /s/ MRC
                                                         Mark R. Colombell
                                                         United States Magistrate Judge

Richmond, Virginia
Date: May 10, 2022